FILED

1    ROBERT BARNES (State Bar No. 119515)
    Email address: rbarnes@kayescholer.com
2    KAYE SCHOLER LLP
    1999 Avenue of the Stars, Suite 1600
3    Los Angeles, California 90067
    Telephone: (310) 788-1000
4    Facsimile: (310) 788-1200

13 JUN 13 PM 12: 57

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

5    DAVID K. BARR
    Email address: david.barr@kayescholer.com
6    KAYE SCHOLER LLP
    425 Park Avenue
7    New York, New York 10022
    Telephone: (212) 836-8000
8    Facsimile: (212) 836-8689

9    Attorneys for Applicant
10   NOVARTIS PHARMACEUTICALS CANADA INC.

11

12   **UNITED STATES DISTRICT COURT**

13   **CENTRAL DISTRICT OF CALIFORNIA**

14   **EASTERN DIVISION**

15   In re:        Case No. ED MC 13-00011-DTBx

16

17   APPLICATION OF NOVARTIS    **EX PARTE APPLICATION OF**
    PHARMACEUTICALS CANADA    **NOVARTIS CANADA FOR A**
18   INC. FOR A SUBPOENA TO      **SUBPOENA TO WATSON**
    WATSON LABORATORIES,       **LABORATORIES, INC.**
19   INC.

20

21        Applicant Novartis Pharmaceuticals Canada ("Novartis Canada") applies *ex*

22   *parte* for an order under 28 U.S.C. § 1782(a) granting Novartis Canada leave to

23   serve a subpoena on Watson Laboratories, Inc. ("Watson Labs") to obtain certain

24   specific product and component samples for use in an application now pending in

25   the Federal Court of Canada for an order of prohibition under the *Patented*

26   *Medicines (Notice of Compliance) Regulations* ("the Canadian Litigation").

27        As this Application explains below, Novartis Canada has satisfied not only

28   each of the prerequisites for application of the statute but has also met all of the

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1   discretionary factors prescribed by the Supreme Court. Accordingly, the Court

2   should grant the Application and approve issuance of the subpoena.

3       The proposed subpoena is attached to the Proposed Order submitted with this

4   Application. Notice of this Application has been provided to Watson Labs

5   consistent with Central District Local Rule 7-19.1. *See* Declaration of Marc

6   Richard In Support of Ex Parte Application of Novartis Canada for a Subpoena to

7   Watson Laboratories, Inc. ("Richard Declaration") at ¶ 28 and Exhibit H.

## I. FACTUAL BACKGROUND

### 1. The Exelon Patch and the Canadian Litigation Against Cobalt.

10      Novartis Canada markets transdermal pharmaceutical products in Canada

11  under the brand names EXELON® PATCH 5 and EXELON® PATCH 10

12  (together, "the Exelon Patch"). Richard Declaration at ¶ 3. The Exelon Patch

13  contains rivastigmine (as an active ingredient in two dosage strengths) and other

14  ingredients, including an antioxidant. *Id.* The Exelon Patch is indicated for the

15  treatment of Alzheimer's disease and other mild dementia conditions. *Id.*

16      In accordance with Canadian law, Novartis Canada has listed Canadian

17  Patent No. 2,315,784 (the "Canadian '784 Patent") on the Patent Register for the

18  Exelon Patch. *Id.* at ¶ 4. The Canadian '784 Patent is co-owned by Novartis AG,

19  an affiliate of Novartis Canada, and another company. *Id.* The Canadian '784

20  Patent claims pharmaceutical compositions of rivastigmine and an antioxidant,

21  including in a transdermal delivery device. *Id.* The Exelon Patch is covered by one

22  or more claims of the Canadian '784 Patent. *Id.*

23      On December 21, 2012, Cobalt Pharmaceuticals Company ("Cobalt") sent

24  Novartis Canada a regulatory notice stating that Cobalt is seeking approval to sell

25  in Canada a generic version of the Exelon Patch ("the Cobalt Patch"). *Id.* at ¶ 5.

26  Cobalt's notice asserted that its proposed product would not infringe the Canadian

27  '784 Patent because the Cobalt Patch does not contain an antioxidant. *Id.*

28      In correspondence, Novartis Canada twice requested to Cobalt that it provide

1

1   samples of the Cobalt Patch which Novartis Canada could test for the presence of

2   an antioxidant, and was twice refused. *Id.* at ¶ 6.  These refusals occurred even

3   though, on January 17, 2013, Novartis Canada and Cobalt had both executed a

4   Confidentiality Agreement specifically committing to keep confidential any

5   samples data and related information Novartis Canada may obtain about the Cobalt

6   Patch. *Id.* at ¶ 7 and Exhibit A ('the Canadian Confidentiality Agreement").  More

7   recently, Novartis Canada renewed its request to Cobalt to provide samples for

8   testing, and, on June 11, 2013 was once again rebuffed. *Id.* at ¶ 27 and Exhibit G.

9         Pursuant to the Canadian Confidentiality Agreement, sampling data produced

10  by Cobalt will be restricted only to counsel and technical consultants for Novartis

11  Canada, and cannot be disclosed more widely without an order from a Canadian

12  court. *See* Canadian Confidentiality Agreement at §§ (c)-(d).  Subsequently, the

13  Canadian court issued Protective and Confidentiality Orders protecting the

14  confidentiality of Cobalt product specifications. *See* Richard Declaration at

15  Exhibits E and F.

16        On February 4, 2013, Novartis Canada brought an application against Cobalt

17  in the Federal Court of Canada seeking an order pursuant to Canadian patent law

18  prohibiting the Canadian Minister of Health from permitting Cobalt to sell the

19  Cobalt Patch. *Id.* at ¶ 8.  Pursuant to the Canadian Litigation, Novartis Canada

20  must shortly file with the Canadian court its evidence of infringement against

21  Cobalt. *Id.* at ¶ 9.

22        Canadian law does not allow Novartis Canada to compel Cobalt to provide

23  information or samples of the Cobalt Patch for testing. *Id.* ¶ 10.  However, the

24  Canadian courts do not exclude -- and, indeed, have often accepted -- evidence

25  obtained through American discovery procedures. *Id.* at ¶ 11.

26        **2. Cobalt and Watson Labs.**

27        According to Cobalt, it is "the Canadian member of The Arrow Group, an

28  international company focused primarily on generic pharmaceutical products.  On

2

KAYE SCHOLER LLP

1  December 2, 2009, The Arrow Group was acquired by Watson Pharmaceuticals,

2  Inc."  Richard Declaration at ¶ 12.  On April 25, 2013, Watson Pharmaceuticals

3  acquired and merged with Actavis, Inc.  *Id.* at Exhibit B.

4       Watson Labs, the subject of the subpoena sought in this Application, is a

5  wholly owned subsidiary of Watson Pharmaceuticals.  *Id.* at ¶ 13.  Watson Labs is

6  a Nevada corporation with its principal place of business in Corona, California, in

7  this District.  *Id.* at Exhibit C.  Watson Labs or its affiliates manufacture generic

8  pharmaceutical products which are sold worldwide, including transdermal patches

9  such as the Cobalt Patch.  *Id.* at ¶ 14 and Exhibit D.  Watson Labs' site in Salt Lake

10  City, Utah manufactures transdermal patches for sale worldwide.  *Id.*  Novartis

11  Canada is informed and believes that Watson Labs manufactures the Cobalt Patch

12  or, at the least, has custody, possession, or control of samples of the Cobalt Patch

13  and/or the component materials used to manufacture the Cobalt Patch.  *Id.*

14      **3.  The U.S. Delaware Litigation.**

15      Novartis AG and a co-assignee also own U.S. Patent No. 6,316,023, the U.S.

16  counterpart to the Canadian '784 Patent ("the '023 U.S. Patent").  Richard

17  Declaration at ¶ 16.  Novartis Pharmaceuticals Corporation, an affiliate of Novartis

18  Canada, sells the Exelon Patch in the United States pursuant to a New Drug

19  Application approved in July 2007 by the United States Food and Drug

20  Administration.  *Id.*  The Exelon Patch sold in the United States is covered by one

21  or more of the claims of the '023 U.S. Patent.  *Id.*

22      In about November 2011, Watson Labs filed an Abbreviated New Drug

23  Application seeking FDA approval to sell in the United States a generic version of

24  the Exelon Patch which is likely identical to the Cobalt Patch its sister company is

25  proposing to sell in Canada ("the Watson Patch").  *Id.* at ¶ 17.  *Id.*

26      On November 9, 2011, four Novartis entities (*not* including Novartis Canada)

27  and their patent co-assignees sued Watson Labs and two other Watson-related

28  entities in the United States District Court for the District of Delaware ("the

KAYE SCHOLER LLP

1   Delaware Litigation"). *Id.* at ¶ 18. In the Delaware Litigation, the Novartis

2   plaintiffs allege that the Watson Patch will infringe three Novartis-owned United

3   States patents, including the '023 U.S. Patent, the counterpart to the Canadian '784

4   Patent that is the basis for the Canadian Litigation. *Id.*

5   The Delaware Litigation presents issues of infringement essentially the same

6   as those in dispute in the Canadian Litigation. In particular, in the Delaware

7   Litigation, exactly as Cobalt has done in defending the Canadian Litigation, Watson

8   Labs and its co-defendants have alleged that the Watson Patch does not infringe the

9   '023 U.S. Patent because it contains no antioxidant. *Id.* at ¶ 19.

10  On November 7, 2012, in open court in the Delaware Litigation, counsel for

11  the Watson defendants acknowledged that the Novartis plaintiffs in the Delaware

12  Litigation had tested samples of the Watson Patch obtained during discovery and

13  determined that it did include an antioxidant. *Id.* at ¶ 20. The Watson defendants

14  disputed this conclusion. *Id.* However, it was only because U.S. discovery rules

15  allowed the Novartis parties in the Delaware Litigation the ability to obtain and test

16  samples of the Watson Patch that the Delaware plaintiffs could gather evidence of

17  the presence of an antioxidant among the ingredients.

18  In the Delaware Litigation, the District Judge has entered a broad protective

19  order prohibiting the parties and their counsel from using information or documents

20  produced in discovery for any purpose unrelated to the Delaware Litigation. *Id.* at ¶

21  21. This protective order prevents Novartis Canada from gaining access to the

22  samples, test results, or any other discovery produced in the Delaware Litigation.

23  *Id.* at ¶ 22.

24  ### 4. Novartis Canada's Section 1782 Request.

25  To assist the Canadian Court to determine whether Cobalt has infringed the

26  Canadian '784 Patent, Novartis Canada seeks to rely on this Court's authority under

27  28 U.S.C. § 1782(a) to serve a subpoena requiring Watson Labs to produce sample

28  patches of each strength of the Cobalt Patch which Novartis Canada can have tested

4

1    for the presence of an antioxidant. *See* Richard Declaration at ¶¶ 23-24.   Novartis

2    Canada also seeks reasonable quantities of each component ingredient of the Cobalt

3    Patch. *Id.* Novartis Canada's requests are narrowly tailored and limited only to

4    these specific, non-privileged materials. *See* Proposed Subpoena attached to

5    Proposed Order (filed concurrently with this Application).

6         As explained more fully below, Novartis Canada has satisfied the three

7    *statutory prerequisites* set forth in Section 1782(a):

8         (i) Novartis Canada is a party to the Canadian Litigation and thus is an

9    "interested person" seeking documents; and

10        (ii) Novartis Canada seeks discovery from Watson Labs which is in Corona

11   and therefore "resides or is found" in this District; and

12        (iii) Novartis Canada seeks the discovery for use in a Canadian federal court

13   application under Canada's *Patented Medicines (Notice of Compliance)*

14   *Regulations*, which is a "proceeding in a foreign . . . tribunal."

15        Further, all of the various *discretionary factors* the Supreme Court indicated

16   in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), strongly favor

17   Novartis Canada:

18        (a) Watson Labs is not a party to the Canadian Litigation;

19        (b) the Canadian courts are not affronted by evidence obtained through

20   United States discovery methods;

21        (c) Novartis Canada is not seeking to circumvent Canadian proof-gathering

22   restrictions; and

23        (d) the subpoena is narrowly drawn and is neither unduly intrusive nor

24   burdensome.

25        For these reasons, Novartis Canada requests that this Court grant this

26   Application and order the issuance of the subpoena.

27

28

KAYE SCHOLER LLP

## II. ARGUMENT.

### A. Section 1782.

The judicial assistance statute, 28 U.S.C. § 1782, permits a person with a sufficient interest in a proceeding before a foreign tribunal to seek leave to obtain discovery in the United States for use in the foreign proceeding. The statute provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

An *ex parte* Application under the statute is proper because any objections to the subpoena may be resolved by a motion to quash or motion to compel after the subpoena has been served and responded to. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976); *In re Ex Parte Application of Motorola Mobility, LLC*, 2012 WL 4936609 at *1 (N.D. Cal. 2012) (granting ex parte § 1782 application for subpoena for specific documents to be used in pending foreign patent infringement action).

### B. Novartis Canada Meets Section 1782's Three Statutory Prerequisites.

Novartis Canada must satisfy three statutory prerequisites before the Court can grant leave to take discovery. Each of the three prerequisites is met here.

*First*, Novartis Canada must be an "interested person." *See* 28 U.S.C. § 1782(a). Litigants in a foreign proceeding are "interested persons." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (complainant in a pending European Commission proceeding is an "interested person"). Novartis Canada is the applicant in the Canadian Litigation and therefore is an "interested person" for purposes of the statute.

*Second*, the person from whom discovery is to be sought must be a "person"

6

KAYE SCHOLER LLP

1    who "resides or is found" in the judicial district where the applicant seeks judicial

2    assistance. *See* 28 U.S.C. § 1782(a). "Person," in this context, includes

3    corporations and other business entities. *See Al Fayed v. CIA*, 229 F.3d 272, 274

4    (D.C. Cir. 2000). "Physical presence in district, even if temporary, is sufficient."

5    2 William Schwarzer & A. Wallace Tashima, *California Federal Civil Procedure*

6    *Before Trial*, ¶11:1297 (2013) (citing *In re Edeleman*, 295 F.3d 171, 173 (2d Cir.

7    2002)). Watson Labs' main offices are in Riverside County in this District.

8    Richard Declaration at ¶ 13 at Exhibit C. *See Motorola*, 2012 WL 4936609 at *2

9    (Apple is based in Cupertino in N.D. California, so statutory requirement is met).

10        *Third*, the discovery must be sought for use in a "proceeding before a foreign

11    or international tribunal." 28 U.S.C. § 1782(a). Canadian federal courts are foreign

12    tribunals. Indeed, U.S. courts have granted judicial assistance in aid of similar

13    Canadian judicial proceedings in other cases. *See, e.g. John Deere Ltd. v. Sperry*

14    *Corp.*, 754 F.2d 132, 135-37 (3d Cir. 1985) (granting discovery for Canadian

15    federal patent infringement case); *In re Application of Mesa Power Group, LLC*,

16    878 F. Supp.2d 1296, 1302-06 (S.D. Fla. 2012) (granting discovery for Canadian

17    arbitration proceeding); *In re Application of Eli Lilly and Co.*, 2010 WL 2509133 at

18    **2-4 (D. Conn. 2010) (granting discovery for Canadian federal patent

19    infringement action).

20        Thus, all of the threshold statutory requirements set forth in Section 1782 are

21    satisfied for Novartis' Canada's subpoena to Watson Labs for use in the Canadian

22    Litigation.[1]

23

24

_____

25    [1]    The Supreme Court has confirmed that the statute does *not* require either that
      the evidence sought in the United States be discoverable under the procedural law
26    of the foreign tribunal, nor that the evidence sought in the United States be
27    admissible under the applicable foreign law. *See Intel*, 542 U.S. at 261-62.

28

KAYE SCHOLER LLP

KAYE SCHOLER LLP

## C. The *Intel* Discretionary Factors All Favor Granting This Application.

Because the statute provides that a district court "may" (but is not required to, *see Intel*, 542 U.S. at 247) order discovery once the Court determines that the three statutory prerequisites are satisfied, the Court must also consider the various discretionary factors the Supreme Court indicated in *Intel. See Mesa Power*, 878 F. Supp.2d at 1303-07 (applying *Intel* discretionary factors and ordering discovery to assist Canadian action); *In re Application of Canadian Private Copying Collective*, 2011 WL 1641982 at **2-3 (D. Minn. 2011) (same); *Eli Lilly*, 2010 WL 2509133 at *2 (same).

*First*, is the person from whom the discovery is sought a party to the foreign proceeding? *See Intel*, 542 U.S. at 264. If so, there is less apparent need for judicial assistance, as the foreign tribunal may simply order the person to provide the discovery. *Id.* Here, Watson Labs -- the target of the subpoena Novartis Canada asks the Court to approve -- is not a party to the Canadian Litigation, and so this factor favors discovery. Novartis Canada believes, however, that Watson Labs manufactures the patch Cobalt seeks to sell in Canada, or at least has custody, possession, or control over the patch's components. *See* Richard Declaration at ¶ 17; *see also Motorola*, 2012 WL 4936609 at * 2 ("Here, although its products are at issue, Apple is not a party to Motorola's [foreign] patent infringement case, and therefore this condition weighs in Motorola's favor.").

*Second*, what is the nature of the foreign proceedings, and will the foreign tribunal be receptive to evidence obtained through this Court's judicial assistance? *See Intel*, 542 U.S. at 264-65. As Mr. Richard's Declaration explains, while Canadian civil procedure does not allow Novartis Canada to compel Cobalt to produce product samples in the Canadian Litigation, the Canadian federal courts are receptive to similar pertinent evidence gathered in the United States. *See* Richard Declaration at ¶ 11(citing pertinent Canadian case law authority); *John Deere*, 754 F.2d at 136 ("We are also satisfied that permitting discovery in this [Canadian

8

1    federal patent infringement] case would not offend the Canadian tribunal."); *Eli*

2    *Lilly*, 2010 WL 2509133 at * 1(allowing Canadian patent plaintiff to discover

3    Chinese production data from U.S. supplier); *see also Canadian Private Collecting*

4    *Collective*, 2011 WL 1641982 at ** 2-3 (granting discovery for Canadian federal

5    copyright infringement case and noting "the Canadian Court's receptiveness to the

6    assistance of the United States courts in obtaining this discovery"). This

7    discretionary factor therefore also favors granting the requested discovery to

8    Novartis Canada.

9         *Third*, does the request conceal an attempt to circumvent foreign proof-

10   gathering limits or other policies of the foreign country or of the United States? *See*

11   *Intel*, 542 U.S. at 264-65. The inquiry under this factor is aimed at determining

12   whether the foreign court would be "affronted" by a party's recourse to US

13   discovery. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir.

14   2011). Canadian courts are "not affronted" by the parties' resort to U.S. discovery,

15   and, indeed, routinely admit evidence obtained from the United States through a

16   Section 1782 action. *See* Richard Declaration at ¶ 11. Thus this factor favors

17   discovery too.

18        *Last*, is the discovery request unduly intrusive or burdensome? *See Intel*, 542

19   U.S. at 260, 264. Novartis Canada's requests for a limited number of product

20   samples and component materials are narrowly tailored and are directed only to

21   information that is crucial to the key disputed issue in the Canadian Litigation. *See*

22   *Eli Lilly*, 2010 WL 2509133 at ** 2-3 (approving focused discovery requests).

23        Further, because of the pre-litigation Canadian Confidentiality Agreement

24   and the court-approved Protective and Confidentiality Orders, the dissemination of

25   the discovered information will be appropriately limited and focused wholly on the

26   Canadian Litigation. *See id.* at *4 (protective order in the Canadian proceeding

27   ensures subpoenaed entity does not "lose control" of confidential information); *see*

28   *also Minatec Finance SARL v. SI Group Inc.*, 2008 WL 3884374 at *9 (N.D.N.Y.

*KAYE SCHOLER LLP*

1    · 2008) ("The beauty of § 1782 is that it permits this Court to impose a protective

2    order that would extinguish any concern that privileged, confidential, or proprietary

3    information would be indecorously revealed.").

4         The *Intel* factors are non-exclusive.  While "reciprocity" -- whether the

5    foreign court will grant judicial assistance to litigants in U.S. litigation -- is not a

6    prerequisite to application of the statue, see *Société Nationale Industrielle*

7    *Aérospatiale v. US Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 529-30 &

8    n.13 (1987), some courts have nonetheless considered reciprocity as a discretionary

9    factor.  *See In re Request For Judicial Assistance From Seoul Dist. Crim. Court*,

10   428 F. Supp. 109, 112 (N.D. Cal.), *aff'd* 555 F.2d 720 (9th Cir. 1977).  Canada, like

11   the United States, is a party to the Convention on the Taking of Evidence Abroad in

12   Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. 7444, and it provides

13   reciprocal judicial assistance to U.S. and other foreign litigants as required by the

14   treaty.  *See* Richard Declaration at ¶ 10.

15        Occasionally, "parity" -- whether one party in the foreign proceeding is able

16   to take advantage of broad U.S. discovery while the other party is limited to the

17   narrower discovery available under the foreign law -- may also be a consideration.

18   *See Intel*, 542 U.S. at 262.  Any parity concerns can be resolved by requiring the

19   party seeking U.S. discovery to agree to permit its opponent to have the opportunity

20   to take reciprocal U.S. discovery.  *See Heraeus Kulzer*, 633 F.3d at 597.  Novartis

21   Canada has confirmed that it would not oppose a reasonable Section 1782 request

22   for discovery by Cobalt in the United States.  Richard Declaration at ¶ 25.

23        In sum, *all* of the discretionary factors favor discovery.

24                         **III.  CONCLUSION.**

25        Because Novartis Canada's Application meets the statutory requirements of

26   28 U.S.C. § 1782, and because all of the discretionary factors also favor granting

27

28

KAYE SCHOLER LLP

10

1  the Application, Novartis Canada requests that the Court grant this Application and

2  authorize it to serve the proposed subpoena on Watson Labs.

3

4  Dated: June 13, 2013                    Respectfully submitted,

5                                          KAYE SCHOLER LLP

6

7  By:_____
                                                Robert Barnes
8                                          Attorneys for Applicant
                                           NOVARTIS PHARMACEUTICALS
9                                          CANADA INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP